UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IATONDA TAYLOR,

        Plaintiff,                Case No. 1:13-cv-1187

v.                                      Honorable Janet T. Neff

HONDA J. FUENTES et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1981, 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed.

**Factual Allegations**

Plaintiff Iatonda Taylor is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). He sues the following MDOC employees at IBC: Warden Kenneth T. McKee, Deputy Warden (unknown) Macauley, Business Manager (unknown) Edwards, and Prison Quartermaster Clerk Honda J. Fuentes.

In his *pro se* complaint, Plaintiff alleges that Quartermaster Clerk Fuentes posted a "racist" magazine article outside the quartermaster (QM) window. (Compl., docket #1, Page ID#5.) The article, which is titled "The Sad Truth About Saggin' Pants," allegedly criticizes "young Black Men" for engaging in the "Self Destructive" trend of wearing sagging pants. (*Id.* at Page ID##10, 11.) Plaintiff also alleges that Fuentes regularly harasses and discriminates against black inmates who come to QM for clothing, by writing misconduct reports against them, having them taken to segregation, and forcing them to undress outdoors in front of the QM window, even when it is raining or snowing. (*Id.* at Page ID##5-6, 11.)

In May of 2013, Plaintiff filed a prisoner grievance complaining about Fuentes and the magazine article. Defendants Edwards and Macauley responded to the grievance. (*See* Step I Grievance Response, docket #1-1, Page ID#28.) They noted that, while "'Saggin' pants and oversized clothes" have been "an issue" with the prisoner population, the article posted by Fuentes was "taken down." (*Id.*) They also instructed the quartermaster to "ensure prisoners are in the proper size clothing and reissue as necessary due to change in clothing size." (*Id.*)

Plaintiff appealed the response to his grievance to step II of the grievance process. Defendant McKee denied the appeal. (Step II Appeal Response, docket #1-1, Page ID#29.) Plaintiff continued his appeal to step III, but his appeal was denied. (Letter re Step III Grievance, docket #1-

1, Page ID#33.) Plaintiff then filed a grievance complaining that his previous grievance was denied and that he was not able to obtain a copy of the magazine article when pursuing that grievance at step II of the grievance appeal process. (*See* Prisoner/Parolee Grievance Form, docket #1-1, Page ID#34.) Plaintiff alleges that he requested a copy from Defendant Edwards, but she did not respond to his request.

Based on the foregoing, Plaintiff claims that Defendant Fuentes engaged in racial discrimination in violation of 42 U.S.C. § 1981(a), state law and MDOC policy. He claims that the other Defendants failed to follow or enforce various state laws and prison policies, including those that prohibit racial discrimination and the use of "derogatory" and/or "degrading" actions or language toward others, and those that require prison staff to notify their supervisors about institutional concerns. (*See* Compl., docket #1, Page ID##12-15.) He also contends that prison staff attempted to "cover up" Fuentes' actions and violated his constitutional right to due process in connection with the grievance process by: withholding a copy of the magazine article from him when he requested it as part of his grievance appeal, failing to address the racist aspect of the magazine article in the grievance responses, and failing to discipline Fuentes.

As relief, Plaintiff requests $730,000 in damages for the humiliation and the psychological pain and suffering he has endured from reading the "demeaning" message in the article posted by Fuentes and from observing Fuentes' behavior toward black inmates, generally. (Compl., Page ID#16.)

**Discussion**

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. State Law

Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, an alleged failure to comply with a state administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Thus, Plaintiff's contention that Defendants violated state law, prison policy, or prison procedure is not, by itself, sufficient to give rise to a claim under § 1983.

### B. Defendant Fuentes

Plaintiff claims that Defendant Fuentes engaged in discriminatory conduct by posting a racially-biased magazine article in front of the QM window. Plaintiff cites 42 U.S.C. § 1981(a), which provides that all persons shall have the same right to "make and enforce contracts"[1] and to

---

[1]"Make and impair contracts" is defined by the statute as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

enjoy "the full and equal benefit of all laws and proceedings for the security of persons and property . . . ." *See* 42 U.S.C. § 1981(a). Similarly, the Equal Protection Clause of the Fourteenth Amendment provides that "no State shall deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To establish a violation of the Equal Protection Clause, a plaintiff must show that the defendant purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

The sole basis for Plaintiff's discrimination claim is that Defendant Fuentes publically espoused a racially-discriminatory viewpoint by posting a magazine article. Plaintiff broadly asserts that Fuentes tends to harass black inmates, but apart from the magazine article, he alleges no instances of harassment or discrimination specifically directed at him.[2] According to the Sixth Circuit, "[t]he use of racially discriminatory language can provide some evidence of a discriminatory purpose when that language is coupled with some additional harassment or constitutional violation," but "[t]he use of a racial epithet by itself is not an actionable violation. . . ." *Taylor v. City of Falmouth*, 187 F. App'x 596, 601 (6th Cir. 2006) (quoting *King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003) (Moore, J., concurring in part and dissenting in part)); *see also Owens v. Johnson*, No. 99–2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000)

---

[2]In his prisoner grievance against Fuentes, Plaintiff indicated that he observed Fuentes harass *other* inmates by forcing them to change their clothing outdoors and by giving them ill-fitted clothing. (*See* docket #1-1, Page ID##20-21.) However, Plaintiff cannot assert the rights of other prisoners because he does not have standing to do so. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992).

("The occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude."); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) ("[A]n officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."). In other words, Plaintiff's claim is based on allegedly discriminatory speech by Fuentes, but speech alone does not give rise to an equal protection claim. Thus, Plaintiff fails to state an equal protection claim against Fuentes under § 1983.

Plaintiff's failure to allege any specific discrimination or deprivation by Fuentes also renders the complaint wholly inadequate to state a claim under § 1981(a). Plaintiff does not allege that Fuentes impaired Plaintiff's ability to "make and enforce contracts"[3] or to enjoy "full and equal benefit of all laws and proceedings for the security of persons and property . . . ." *See* 42 U.S.C. § 1981(a). Thus, Plaintiff does not state a claim against Fuentes under either § 1981 or § 1983.

### C. Defendants McKee, Macauley & Edwards

Plaintiff sues Defendants McKee, Macauley, and Edwards because they did not adequately address the concerns raised in his grievance regarding Fuentes and the magazine article. He also claims that Defendant Edwards violated his right to due process by failing to provide him with a copy of the article for his grievance appeal.

---

[3]"Make and impair contracts" is defined by the statute as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

1. Due Process

Plaintiff's due process claim is without merit because there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct in connection with that process did not deprive Plaintiff of due process.

2. Supervisory Liability

To the extent Plaintiff sues Defendants McKee, Macauley, and Edwards for their failure to correct the allegedly discriminatory conduct of Defendant Fuentes, he does not state a cognizable federal claim because government officials may not be held liable under § 1981 or § 1983 for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *See Iqbal*, 556 U.S. at 676 (discussing § 1983); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978) (same); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (same); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (discussing § 1981). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to allege that Defendants McKee, Macauley, and Edwards personally engaged in any conduct that violated his constitutional rights or his rights under § 1981.

In short, Plaintiff fails to state a federal claim against any of the Defendants.

## II. Supplemental jurisdiction

As indicated, Plaintiff contends that Defendants violated state law and prison policies. A violation of state law or policy is not sufficient by itself to give rise to a cognizable federal claim, but to the extent Plaintiff asserts any claims that would be cognizable under state law, the Court must determine whether to retain supplemental jurisdiction over such claims. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental

jurisdiction. Accordingly, Plaintiff's independent state-law claims, if any, will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). His state-law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).[4]

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:   November 25, 2013              /s/ Janet T. Neff
                                                          Janet T. Neff
                                                          United States District Judge

---

[4]Because Plaintiff's action will be dismissed, his pending motion for discovery (docket #3) is moot.